**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LeTip World Franchise LLC, | No. CV-24-00165-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Long Island Social Media Group LLC, BxB Professionals LLC, Clifford Pfleger, Heather Pfleger, and Saranto Calamas, | |
| Defendants. | |

Plaintiff LeTip World Franchise, LLC ("LeTip Franchise") is a privately-owned business leads networking organization comprised of more than 250 franchises. LeTip Franchise filed this suit alleging the operators of one such franchise, defendants Long Island Social Media Group, LLC ("LISMG"), Clifford Pfleger,[1] and Saranto Calamas, breached the terms of their franchise agreement by modifying LeTip Franchise's logo and improperly competing with LeTip Franchise through defendant BxB Professionals, LLC ("BxB").

LISMG, Pfleger, and Calamas answered LeTip Franchise's complaint and alleged counterclaims against LeTip Franchise, LeTip Franchise's parent organization LeTip International, Inc. ("LeTip International"), its owner Summer Middleton, and an officer of LeTip Franchise Paul Della Valle. Those counterdefendants filed a motion to dismiss.

---

[1] Clifford's spouse, Heather Pfleger, was named as a defendant but her involvement with the governing agreements and events is not clear. (Doc. 1.) Heather does not assert any counterclaims and her presence as a defendant will be ignored for purposes of this order.

1  That motion is granted with limited leave to amend.

**I.  Background**

LeTip International is a California-based networking organization that aims to promote professional development. (Doc. 99 at 15–16.) Its franchising entity, Arizona-based LeTip Franchise, grants franchises to qualified individuals to operate regional LeTip Franchise chapters. (Doc. 99 at 15–16.) On April 10, 2020, LeTip Franchise entered into a franchise agreement (the "Franchise Agreement") with LISMG, granting LISMG the right to operate a LeTip franchise within Suffolk County, New York, for five years. (Doc. 99 at 22.)

The Franchise Agreement prohibits LISMG, Pfleger, and Calamas from operating a competing business within the same geographic area while the agreement was effective and for two years after its termination. (Doc. 1-1 at 13, 26–28.)[2] LeTip Franchise concurrently executed a Franchise Owner Agreement with Pfleger which similarly prohibits him from competing against LeTip Franchise under the same terms. (Doc. 1-1 at 32–33.)

The Franchise Agreement allows franchisees to use certain LeTip trademarks and logos in connection with the operation of their local chapter. (Doc. 7 at 3–4.) But the agreement prohibits franchisees from using the LeTip logos in any modified form and requires them to submit proposed advertising to LeTip Franchise for approval. (Doc. 1-1 at 16.)

In 2021, Pfleger affixed a LeTip logo to his boat, which he modified by adding the word "Just" directly above "LeTip." (Doc. 99 at 23.) He alleges LeTip International gave him and LISMG permission to modify LeTip's logo in a text message from John Pokorny, then the Chief Financial Officer of LeTip Franchise and a negotiator of the Franchise Agreement. (Doc. 99 at 21, 23.) Afterwards, Pfleger covered and drydocked

---

[2] These agreements were attached to the original complaint but were not attached to the answer and counterclaims. The parties do not dispute their accuracy and they provide some of the bases for the counterclaims. *Cf. United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (the court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment").

- 2 -

the boat until April 2023, when he moved it to a private marina and posted a picture of it on his social media account. (Doc. 99 at 24–25.)

After seeing the logo, Middleton and Della Valle met with Pfleger and Calamas on May 3, 2023. At that meeting, they asked Pfleger to remove the logo and the photograph of the boat on social media sites. (Doc. 99 at 26.) Middleton also made this request in a written letter from LeTip's trademark counsel, which demanded that Pfleger "immediately remove" the logo and social media post or risk termination of the Franchise Agreement. (Doc. 1 at 8; Doc. 1-2 at 2–3.)

Pfleger alleges Middleton orally provided him 30 business days to remove the logo, which she contests. (Doc. 99 at 26; Doc. 49 at 11.)

Although Pfleger took steps to remove the logo that same day, he ultimately did not do so until after Middleton sent him a termination notice on June 12, 2023. (Doc. 99 at 27.) The notice purported to terminate the Franchise Agreement because Pfleger had not removed the altered logo by June 2, despite Middleton providing him a 30-day "opportunity to cure these defaults," which the agreement's terms purportedly did not require. (Doc. 1-3 at 2–4.) She noted the altered logo could reasonably be expected to adversely affect LeTip Franchise's reputation so LeTip Franchise was entitled to terminate the Franchise Agreement without a cure period under its terms. (Doc. 1-3 at 3–4.)

Around December 2023 or January 2024, Pfleger announced on LinkedIn that he was starting a new position as a Regional Director at BxB. (Doc. 7 at 10.) BxB identifies itself as a networking organization that aims to connect its members through business leads. (Doc. 7 at 11.) BxB's registered corporate address is allegedly the same address listed for LISMG and also the address Calamas lists for his CPA license. (Doc. 7 at 11.)

Pfleger planned to hold a "launch party" for BxB the night of Thursday, February 1, 2024, at the same venue where LeTip's Suffolk County chapters hold their monthly meetings on the first Friday of every month. (Doc. 7-1 at 8.) In response, LeTip Franchise filed for a temporary restraining order to enjoin LISMG, BxB, Pfleger, and Calamas from

operating BxB. The court granted the motion in part, prohibiting defendants from owning, operating, or maintaining any other interest in any business defined as a "Competitive Business" in the Franchise Agreement or from attending the BxB launch party. (Doc. 21 at 15–16.) After a preliminary injunction hearing on February 14 and 22, the court enjoined defendants from owning, operating, or maintaining any other interest in any Competitive Business, attempting to divert any business from LeTip or its affiliates, or inducing any LeTip member or affiliate to transfer its business to defendants or any other person or entity that is not a LeTip franchise within defendants' former franchise territory (Suffolk County, New York). (Doc. 49 at 21–22.)

On December 13, 2024, LISMG, Pfleger, and Calamas filed an amended answer and counterclaims against LeTip Franchise, LeTip International, Middleton, and Della Valle, alleging they breached the Franchise Agreement by creating a competing LeTip International chapter with former members of LISMG's franchise, terminating the Franchise Agreement without cause, and defaming LISMG, Pfleger, and Calamas by stating the modified logo was "sexually suggestive" and "vulgar." (Doc. 99 at 27–30.) The counterclaimants (collectively the "LISMG parties") also sought injunctive relief prohibiting the counterdefendants (collectively the "LeTip parties") from enforcing the Franchise Agreement's non-compete clause. (Doc. 99 at 30.) The LeTip parties moved to dismiss all claims. (Doc. 103.)

**II.  Standard**

The same standard applies to a Rule 12(b)(6) motion to dismiss a defendant's counterclaim as to a motion to dismiss a plaintiff's claim. *See Koeplin v. Klotz*, 265 F. Supp. 3d 1039, 1041 (N.D. Cal. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Breach of Contract

The LISMG parties allege the LeTip parties breached the Franchise Agreement by starting a competing LeTip chapter and terminating the Franchise Agreement without cause. Both of these theories fail.

#### a. Privity

Three of the counterdefendants (LeTip International, Middleton, and Della Valle) are not parties to the Franchise Agreement. (Doc. 1-1 at 4.) The LISMG parties argue they should be given the "opportunity to produce and adduce additional evidence" showing each LeTip company is an alter ego of Middleton and that Middleton and Della Valle "acted outside the scope of their official capacities" by "trespassing . . . on the private Marina . . . where Pfleger's boat was docked." (Doc. 109 at 7.)[3] The LISMG parties do not explain the relevance of this trespassing argument but regardless, they have not provided any factual allegations establishing an alter-ego relationship. *Barba v. Seung Heun Lee*, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009) ("[T]he plaintiff must allege specific facts supporting application of the alter ego doctrine."); *Cavan v. Maron*, 2016 WL 4429674, at *3 (D. Ariz. Aug. 22, 2016) ("In order to survive the motion to dismiss . . . [the plaintiff] must also allege sufficient facts, accepted as true, to show a right to relief . . . on alter ego grounds that rises above a speculative level."). Because there are no alter ego allegations, there is no basis to conclude LeTip International, Middleton, or Della Valle are in privity with LeTip Franchise and the breach of contract claim against

---

[3] The LISMG parties only argue LeTip International and LeTip Franchise are alter egos of Middleton, not Della Valle. (Doc. 109 at 7.) Accordingly, the LISMG parties have waived any argument LeTip International and LeTip Franchise are alter egos of Della Valle. *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a party who "fails to raise [an] issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim").

- 5 -

them is dismissed.

### b. Issue Preclusion

LeTip Franchise argues the breach of contract claim is barred by issue preclusion because it is predicated on the same factual allegations and legal theories the LISMG parties asserted in opposition to the preliminary injunction motion the court previously adjudicated in LeTip International's favor. (Doc. 103 at 8.)

Issue preclusion prevents litigating "'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five Platters*, Inc., 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. American Tel. & Tel. Co*., 606 F.2d 842, 845 (9th Cir. 1979)). A party asserting issue preclusion must establish three things: (1) the issue decided at the previous proceeding is identical to the present issue; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding. *In re Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007). The parties dispute whether the preliminary injunction is sufficiently final to preclude the LISMG parties from relitigating those issues. (Doc. 103 at 9; Doc. 109 at 7.) It is not.

For purposes of issue preclusion, a "final judgment" includes "any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). To determine if a judgment is "sufficiently firm," courts may consider whether (1) the decision was not avowedly tentative; (2) the parties were fully heard; (3) the court supported its decision with a reasoned opinion; and (4) the decision was subject to or reviewed on appeal. *Householder Grp., LLLP v. Van Mason*, No. CV 09-2370-PHX-MHM, 2010 WL 5093117, at *2 (D. Ariz. Dec. 8, 2010) (citing *Luben*, 707 F.2d at 1040). In general, factual determinations and the legal conclusions drawn from those factual determinations made by a court when granting preliminary injunctive relief are not final adjudications on the merits. *Sierra On-Line, Inc. v. Phoenix Software*, 739 F.2d 1415, 1423 (9th Cir.1984) (finding in a preliminary injunction hearing "[t]he district

court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved."); *see also Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025) (holding a party "who wins a transient victory on a preliminary injunction does not become a 'prevailing party'" and is not granted "enduring judicial relief on the merits"). The preliminary injunction order noted many times it was only concluding there was "a likelihood of success on the merits." (Doc. 49 at 15, 18–19.) In the circumstances of this case, the preliminary injunction order will not be given preclusive effect.

### c. Merits

Nonetheless, the LISMG parties' breach of contract claim is not plausible on its face. The LISMG parties allege two breaches: (1) LeTip Franchise formed a competing LeTip chapter in violation of the Franchise Agreement; and (2) the Franchise Agreement was terminated without cause because Pfleger had permission to modify the logo and alternatively cured the breach within 30 business days. (Doc. 99 at 25–28.) Both of these theories fail.

#### i. Competing Chapter

The Franchise Agreement is governed by Arizona law. (Doc. 1-1 at 22.) In Arizona, a plaintiff alleging breach of contract must allege facts establishing the existence of a valid and enforceable contract, how that contract was breached, and the damages he suffered. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) (recognizing elements of breach-of-contract claim).

The parties do not dispute the existence of a valid and enforceable contract. The LISMG parties alleges the Franchise Agreement obligated LeTip International to "not solicit, take, or accept, any existing members of any [LeTip International] Chapter within Suffolk County New York and transfer them to another [LeTip International] Chapter in the same area" outside of LISMG's control during its existence and for two years after it terminated. (Doc. 99 at 25.) But as occurred during the preliminary injunction hearing, the LISMG parties are unable to point to any provision of the Franchise Agreement that prohibited LeTip Franchise from competing with LISMG. (Doc. 49 at 14.) In other

words, the counterclaims do not contain facts plausibly alleging *how* the contract was breached. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages."). Because the LISMG parties cannot point to any contractual provision that was breached, this breach-of-contract theory fails.

### ii. Franchise Agreement Termination

The LISMG parties also argue LeTip Franchise breached the Franchise Agreement by terminating it. They allege Pfleger received permission to affix the modified logo to his boat and alternatively cured his breach within 30 business days (as Middleton allowed), so there was no valid basis for termination. This theory also fails.

LeTip Franchise allegedly terminated the Franchise Agreement with LISMG because Pfleger placed the altered LeTip logo on his boat in violation of the Franchise Agreement. (Doc. 99 at 27.) The Franchise Agreement prohibits LISMG and its owners from using LeTip's logo "in any modified form . . . or with any prefix, suffix, or other modifying words, terms, designs of symbols." (Doc. 1-1 at 16.) After Pfleger added "Just" before "LeTip," Middleton and Della Valle told Pfleger this modification violated the terms of the Franchise Agreement. (Doc. 99 at 27.)

The LISMG parties argue this breach was excused by Pokorney, who allegedly granted LISMG permission to alter the LeTip logo in text messages. (Doc. 99 at 24.) Even assuming this is true, the Franchise Agreement only allows for subsequent modification "in writing signed by the parties." (Doc. 1-1 at 48.) The LISMG parties do not allege the parties modified the Franchise Agreement in a signed writing. Because the parties never modified the contract in the only way the agreement allowed, LeTip Franchise cannot have breached a provision of the Franchise Agreement by terminating it. *Graham*, 540 P.2d at 657.

Furthermore, the LISMG parties allege they were provided 30 business days to cure their breach of the Franchise Agreement but the LeTip parties terminated it before the end of the cure period. (Doc. 99 at 27.) However, the LISMG parties acknowledge the

- 8 -

Franchise Agreement allows LeTip Franchise to terminate, "in [its] sole discretion," for an act that "can be reasonably be expected to adversely affect the reputation of the . . . goodwill associated with the [trademark]" or for "an unauthorized use of the Intellectual Property" after five days' written notice without the opportunity to cure. (Doc. 109 at 4 (quoting Doc. 1-1 at 19-20).) The LISMG parties provide no basis under the Franchise Agreement for demanding or relying on a representation they would have 30 business days to cure their breach.

The LISMG parties do not provide any facts or meaningful legal argument explaining why LeTip Franchise's termination violated the plain terms of the Franchise Agreement. *Cent. Arizona Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1128 (D. Ariz. 1998) ("A court should construe a contract in a manner that gives full meaning and effect to all its provisions[.]"). And even if the LISMG parties purportedly obtained permission or were orally granted 30 business days to cure Pfleger's breach, they do not allege such modifications were "in writing signed by the parties" as required by the Franchise Agreement. (Doc. 1-1 at 48.) Accordingly, the LISMG parties' breach-of-contract claim is dismissed.

**IV.     Defamation**

The LISMG parties allege the LeTip parties defamed them per se when Middleton told other LeTip members that Pfleger intentionally altered the LeTip logo into a "sexually suggestive, vulgar" phrase "even though [she] knew, or reasonably should have known" that Pfleger (1) had permission to use the altered logo and (2) only used it as a sales incentive for others because the logo meant that Pfleger bought the boat "just using LeTip money." (Doc. 99 at 29.) The LISMG parties argue Middleton's statements included a "false statement of fact" that negatively affected the professional reputation of the LISMG parties because "it tends to make it less likely that others will use their services." (Doc. 99 at 30.)

The LISMG parties brought their defamation claim against all LeTip parties but only Middleton is alleged to have made defamatory statements. (Doc. 99 at 29–30.)

Because they do not allege any defamatory statements by any other of the LeTip parties, the defamation claim against LeTip Franchise, LeTip International, and Della Valle is dismissed. *Hintzen-Gaines v. Adelson*, No. 1 CA-CV 23-0562, 2024 WL 4603798, at *2 (Ariz. Ct. App. Oct. 29, 2024) (noting defamation requires "defendant [made] a false statement concerning the plaintiff").

Defamation can be per se or per quod.[4] *Ruggeroli v. Residential Real Est. Council*, No. CV-23-00259-TUC-JAS, 2024 WL 4203156, at *6 (D. Ariz. Sept. 16, 2024). Defamation per se constitutes "facially defamatory statements" that do not require "'extrinsic matter' or facts to understand the statements are defamatory." *Id.* Defamation per se can be shown if the communication falsely imputes to the claimant "(1) a criminal offense, (2) a loathsome disease, (3) a matter incompatible with his business, trade, profession, or office, or (4) serious sexual misconduct." *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1074 (D. Ariz. 2015). The LISMG parties do not identify an applicable category. To the extent they seek to claim Middleton falsely communicated Pfleger committed "serious sexual misconduct," her statements do not meet the requisite severity. *See, e.g.*, *McKnight v. McKnight*, No. CV-20-01956-PHX-DWL, 2021 WL 1923758, at *1 (D. Ariz. May 13, 2021) (analyzing statements claimant engaged in incest); *Ruggeroli*, 2024 WL 4203156, at *7 (concluding implication of sexual harassment insufficient to find defamation per se).

Alternatively, to the extent the LISMG parties seek to claim Middleton falsely communicated a matter incompatible with Pfleger's business, trade, or profession, the statement must "disparage[] a quality that is 'peculiarly valuable' to [Pfleger's]

---

[4] A federal court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Arizona law has adopted the Restatement of Conflicts, which provides "the local law of the state where the publication occurs determines the rights and liabilities of the parties" in a defamation action unless "some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied." *Carey v. Maricopa Cnty.*, 602 F. Supp. 2d 1132, 1136 (D. Ariz. 2009) (quoting Restatement (Second) of Conflicts § 149 (Am. L. Inst. 1971)). The LISMG parties do not specify where the statement was made and the parties do not dispute Arizona law applies to this claim. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte."). Therefore, the court applies Arizona law to this claim.

profession." *Breeser v. Menta Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1164 (D. Ariz. 2013), (quoting Restatement (Second) of Torts § 573 cmt. e (Am. L. Inst. 1977)), *aff'd sub nom.*, *Breeser v. Menta Grp., Inc.*, 622 F. App'x 649 (9th Cir. 2015). Here, the LISMG parties do not explain how calling the altered logo "sexually suggestive" and "vulgar" disparaged Pfleger's ability as a businessman. *See Hirsch v. Cooper*, 737 P.2d 1092, 1094 (Ariz. Ct. App. 1986) (finding statement that disparaged doctor's ability as a physician was defamatory per se because it "injure[d him] in his profession."). The counterclaims therefore do not state a claim for per se defamation.

Defamation per quod encompasses "statements that require knowledge of certain surrounding circumstances." *Ruggeroli*, 2024 WL 4203156, at *6 (quotations omitted). A person commits defamation of a private individual when sharing a "false and defamatory statement about the individual to a third party with knowledge of the statement's falsity or with negligent disregard for its truthfulness." *Wichansky*, 150 F. Supp. 3d at 1074. A defamatory statement "must bring the subject of the statement into disrepute, contempt, or ridicule or impeach the subject's honesty, integrity, virtue, or reputation." *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021) (quotations omitted).

The LISMG parties also do not meet this standard. First, they do not provide any facts to explain why the statement was false. They argue Middleton should have known Pfleger had permission to use the altered logo but permission does not change "Just LeTip's" "sexually suggestive" and "vulgar" connotation. And even if Pfleger altered the logo only to show he bought the boat using money he made from LeTip—which the LISMG parties never allege is true—this too would not negate the sexually suggestive and vulgar connotation commonly associated with this phrase. The LISMG parties also never allege facts supporting that Middleton knew the true meaning of the altered logo or negligently disregarded its purported truthfulness. *Wichansky*, 150 F. Supp. 3d at 1074.

Furthermore, because the statement is not defamatory per se, the LISMG parties must allege facts showing they were damaged by Middleton's statement. *Wichansky*, 150 F. Supp. 3d at 1074. The LISMG parties allege in a conclusory fashion that Middleton's

- 11 -

statement "deleteriously affected [their] professional reputation[s] . . . because it tends to make it less likely that others will use their services." (Doc. 99 at 30.) But they do not provide any facts explaining how this allegation is true. *Iqbal*, 556 U.S. at 681 (holding conclusory allegations "are not entitled to be assumed true").

Accordingly, the LISMG parties' defamation claim is dismissed.

## V. Injunctive Relief

The LISMG parties plead a standalone claim for injunctive relief to permanently enjoin the LeTip parties from enforcing the Franchise Agreement's non-compete clause. This claim is dismissed.

First, injunctive relief is not a standalone claim under Arizona law. *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Turner*, 2 P.3d 1276, 1280 (Ariz. Ct. App. 2000). And the LISMG parties' failure to cross-move for a preliminary injunction earlier in the case undermines its request for a permanent injunction. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1005-1006 (9th Cir. 2023) ("[D]elay in seeking a preliminary injunction may also undermine a permanent injunction."). The LISMG parties argue they "never had a chance to litigate these issues" because the temporary restraining order hearing occurred on January 31, 2024, "only days" after they were served with an order to show cause, and the preliminary injunction hearing "took place less than three weeks later." (Doc. 109 at 9.) But the LISMG parties did not file their counterclaims until nearly a year later on December 13, 2024. (Doc. 99.) Courts (including this one) are "loath to withhold relief solely" because of delay, but plaintiffs typically provide some explanation for the delay or allege "ongoing, worsening injuries" that prompt the need for interim relief. *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). That the LISMG parties failed to explain their nearly year-long delay in seeking relief cuts against their argument they are being irreparably harmed in the absence of an injunction. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").

Separately, the LISMG parties argue Arizona law does not apply because the

counterclaims were originally filed in the Eastern District of New York and, with defendants' consent, "transferred, wholesale, without the ability to amend them, to a new Arizona action." Doc. 109 at 8; *Long Island Social Media Group LLC v. LeTip International Incorporated*, No. 2:23-cv-09405, Doc. 29, at 6 (D. Ariz. Nov. 12, 2024). They do not explain why initially filing in New York requires the court to apply New York law—even in the face of the Franchise Agreement's choice of law clause—or why they were unable to amend their counterclaims after the transfer. And even if New York law applied, which it does not, the LISMG parties have not "adequately state[d] a cause of action" for injunctive relief because it is not a standalone cause of action under New York law either. Doc. 109 at 8; *TLM Suffolk Enters., Inc. v. Town of Brookhaven*, No. 20-CV-2548 (PKC) (LGD), 2023 WL 6292530, at *8 (E.D.N.Y. Sept. 27, 2023) ("[N]either declaratory nor injunctive relief is a standalone cause of action; rather, it is a remedy.").

Because injunctive relief is not a standalone claim, this counterclaim is dismissed with prejudice. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 103) is **GRANTED**. The breach of contract and defamation claims are **DISMISSED WITH LEAVE TO AMEND**. The claim for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND**.

/
/
/
/
/
/
/

1    **IT IS FURTHER ORDERED** if counterclaimants wish to file amended
2 counterclaims, they must do so no later than **June 3, 2025**. If amended counterclaims are
3 filed, counterdefendants shall respond to those counterclaims by the deadline established
4 by the Federal Rules. If counterclaimants do not wish to file amended counterclaims, no
5 later than **June 3, 2025**, they shall file a statement to that effect.
6    Dated this 20th day of May, 2025.

Honorable Krissa M. Lanham
United States District Judge