**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LeTip World Franchise LLC, | No. CV-24-00165-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Long Island Social Media Group LLC, BxB Professionals LLC, Clifford Pfleger, Heather Pfleger, and Saranto Calamas, | |
| Defendants. | |

Plaintiff LeTip World Franchise, LLC ("LeTip Franchise") believes the operators of one of its franchises, defendants Long Island Social Media Group, LLC ("LISMG"), Clifford Pfleger,[1] and Saranto Calamas, breached the terms of their franchise agreement. Defendants answered the complaint and asserted counterclaims. The court dismissed those counterclaims with limited leave to amend and defendants then realleged counterclaims for breach of contract and defamation against LeTip Franchise, LeTip Franchise's parent organization LeTip International, Inc. ("LeTip International"), and its owner Summer Middleton. These counterdefendants again moved to dismiss all counterclaims. The motion to dismiss is granted in part and denied in part, this time without leave to amend.

**I.     Background**

The court's May 20, 2025, order provides a more complete factual background.

---

[1] Clifford's spouse, Heather Pfleger, was named as a defendant but her involvement with the governing agreements and events is not clear. (Doc. 1.) Heather does not assert any counterclaims and her presence as a defendant will be ignored for purposes of this order.

(Doc. 111 at 2–5.) For present purposes, the crucial facts are that in April 2020, LeTip Franchise entered into a franchise agreement (the "Franchise Agreement") with LISMG, granting LISMG the right to operate a LeTip franchise within Suffolk County, New York, for five years. (Doc. 115 at 22.) That agreement allows franchisees to use certain LeTip trademarks and logos in connection with the operation of their local chapter. (Doc. 7 at 3–4.) But the agreement prohibits franchisees from using the LeTip logos in any modified form and requires them to submit proposed advertising to LeTip Franchise for approval. (Doc. 1-1 at 16.)

In 2021, Pfleger affixed a LeTip logo to his boat, which he modified by adding the word "Just" directly above "LeTip." (Doc. 115 at 30.) He alleges LeTip International gave him and LISMG permission to modify LeTip's logo in a text message from John Pokorny, then the Chief Financial Officer of LeTip Franchise and a negotiator of the Franchise Agreement. (Doc. 115 at 30.) Afterwards, Pfleger covered and drydocked the boat until April 2023, when he moved it to a private marina and posted a picture of it on his social media account. (Doc. 115 at 31.)

After seeing the logo, Middleton and an officer of LeTip Franchise, Paul Della Valle, met with Pfleger and Calamas on May 3, 2023. At that meeting, they asked Pfleger to remove the logo from the boat and the photograph of the boat from social media sites. (Doc. 115 at 32.) Pfleger alleges Middleton orally provided him 30 business days to remove the logo. (Docs. 115 at 32; 49 at 11.)

Although Pfleger took steps to remove the logo that same day, he ultimately did not do so until after Middleton sent him a termination notice on June 12, 2023. (Doc. 115 at 33.) The notice purported to terminate the Franchise Agreement because Pfleger had not removed the altered logo by June 2, despite Middleton allegedly providing 30 business days to cure. (Doc. 115 at 33.) She noted the altered logo could reasonably be expected to adversely affect LeTip Franchise's reputation so LeTip Franchise was entitled to terminate the Franchise Agreement without a cure period under its terms. (Doc. 115 at 34.)

Around this same time, Middleton told other LeTip members that Pfleger had

"intentionally altered the Letip Logo . . . to turn it into a sexually suggestive, vulgar, phrase." (Doc. 115 at 38.) Middleton allegedly knew that was false because Pfleger had told her he altered the logo to indicate "the boat was bought with just money earned from LeTip and maybe if [others] joined they could do as well." (Doc. 115 at 39.) In early 2024, LeTip Franchise filed this suit alleging the LISMG parties breached the terms of the Franchise Agreement by modifying LeTip Franchise's logo and improperly competing with LeTip Franchise through the creation of BxB Professionals, LLC. (Doc. 111 at 1.)

In December 2024, LISMG, Pfleger, and Calamas filed counterclaims against LeTip Franchise, LeTip International, Middleton, and Della Valle, alleging they breached the Franchise Agreement by creating a competing LeTip International chapter with former members of LISMG's franchise, terminating the Franchise Agreement without cause, and defaming LISMG, Pfleger, and Calamas by stating the modified logo was "sexually suggestive" and "vulgar." (Doc. 99 at 27–30.) The counterclaimants (collectively the "LISMG parties") also sought injunctive relief prohibiting the counterdefendants (collectively the "LeTip parties") from enforcing the Franchise Agreement's non-compete clause. (Doc. 99 at 30.) The LeTip parties moved to dismiss all counterclaims. (Doc. 103.) This court dismissed all the counterclaims with limited leave to amend on May 20, 2025. (Doc. 111.) The LISMG parties were permitted to amend only the breach-of-contract and defamation counterclaims. (Doc. 111 at 13.)

On June 17, 2025, the LISMG parties filed a second amended answer with amended counterclaims for breach of contract and defamation. (Doc. 115.) Once again, the LeTip parties moved to dismiss all counterclaims. (Doc. 118.)

## II. Standard

The same standard applies to a Rule 12(b)(6) motion to dismiss a defendant's counterclaim as to a motion to dismiss a plaintiff's claim. *See Koeplin v. Klotz*, 265 F. Supp. 3d 1039, 1041 (N.D. Cal. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Breach of Contract

The LISMG parties allege LeTip International and LeTip Franchise breached the Franchise Agreement by starting a competing LeTip chapter and terminating the Franchise Agreement without cause. (Doc. 115 at 22.) The improper competition theory fails, but the improper termination theory may proceed past the pleading stage.

#### a. Privity

The only parties bound on the face of the contract are LeTip Franchise and LISMG. (Doc. 1-1 at 4.) Despite that, LISMG previously sought to pursue their breach-of-contract counterclaim against LeTip International, LeTip Franchise, Middleton, and Della Valle. The court dismissed the breach-of-contract claim because there were no alter-ego allegations establishing that LeTip International, Middleton, or Della Valle could be responsible under a contract involving only LeTip Franchise. (Doc. 111 at 5.) The LISMG parties now allege their breach-of-contract claim only against LeTip International and LeTip Franchise. But they still have not provided a plausible basis to conclude LeTip International is a proper defendant for the breach-of-contract claim.

The LISMG parties argue LeTip Franchise and LeTip International "are both proper parties" to the breach-of-contract claim, apparently because the complaint "conflates, equates, and combines" them. (Doc. 122 at 4.) This alone is not enough to establish LeTip International should be treated as a party under the Franchise Agreement.

A corporation—including a subsidiary of a parent company—is generally treated as its own legal entity. *Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2009 WL

8747368, at *4 (D. Ariz. Nov. 4, 2009). However, a parent company may be liable for the actions of its subsidiary if the subsidiary is acting as an alter ego of the parent company. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015); *see also Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214 (Ariz. Ct. App. 2010).

Although LeTip Franchise and LeTip International have the same owner and president (Doc. 118 at 5), the LISMG parties do not allege sufficient facts in their counterclaims to establish liability under an alter-ego theory. *Barba*, 2009 WL 8747368, at *4, ("[T]he plaintiff must allege specific facts supporting application of the alter ego doctrine."); *Cavan v. Maron*, No. CV-15-02586-PHX-PGR, 2016 WL 4429674, at *3 (D. Ariz. Aug. 22, 2016) ("In order to survive the motion to dismiss . . . [the plaintiff] must also allege sufficient facts, accepted as true, to show a right to relief . . . on alter ego grounds that rises above a speculative level."); *Ranza*, 793 F.3d at 1073 ("ownership and shared management personnel are alone insufficient to establish pervasive control of subsidiary"). Facts supporting applying the alter-ego doctrine might include using corporate assets for personal purposes, failing to adhere to mandatory corporate formalities, or intermingling assets and employees between corporations. *Barba*, 2009 WL 8747368, at *5 (citing *Whitney v. Wurtz*, No. C-04-5232 PVT, 2006 WL 83119, at *2 (N.D. Cal. Jan. 11, 2006)). Here, the LISMG parties did not themselves include any such allegations and instead rely on inferences drawn from the LeTip parties' complaint. But the LISMG parties cite no authority allowing a party to shirk its burden to plead alter-ego allegations by relying on inexact phrasing by opposing counsel. *See Ranza*, 793 F.3d at 1073 (requiring party alleging alter-ego theory must make prima facie case showing alter ego).

Additionally, the LISMG parties allude multiple times to additional evidence "already in their possession," arguing they should be allowed to show sometime later (for example, in a motion for summary judgment) that LeTip International and LeTip Franchise are the same company. (Doc. 122 at 4.) The LISMG parties never explain why they did not include the information they possessed in their counterclaims, and their request shows a misunderstanding of both civil procedure and the court's prior order telling them to do so

- 5 -

(Doc. 111 at 5). *See* Fed. R. Civ. P. 8 (requiring complaint state plausible claim for relief). Ultimately, the LISMG parties have not sufficiently pleaded facts to support an alter-ego relationship between LeTip Franchise and LeTip International. Therefore, the breach-of-contract claim against LeTip International is dismissed.

### b.  Merits

The LISMG parties allege two breaches: (1) LeTip Franchise formed a competing LeTip chapter in violation of the Franchise Agreement and revoked the membership of their own existing members in violation of the LeTip By-Laws (Doc. 115 at 22–26); and (2) the Franchise Agreement was terminated without cause because Pfleger had permission to modify the logo and cured the breach within 30 business days. (Doc. 115 at 28.) The improper competition theory fails, but the LISMG parties may move forward with the termination-without-cause claim.

### i.  Competing Chapter and Membership Revocation

The Franchise Agreement is governed by Arizona law. (Doc. 1-1 at 22.) In Arizona, a plaintiff alleging breach of contract must allege facts establishing the existence of a valid and enforceable contract, how that contract was breached, and the damages he suffered. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) (recognizing elements of breach-of-contract claim).

The parties do not dispute the existence of a valid and enforceable contract in the form of the Franchise Agreement. The LISMG parties allege that agreement gave LISMG the exclusive right to establish new LeTip International Chapters in the Franchise Area (defined as Suffolk County, New York) and obligated LeTip Franchise not to compete with LISMG by opening or operating any new LeTip Chapters in the Franchise Area. (Doc. 115 at 23–26.) They cite Sections 3–3.3 of the Franchise Agreement, which contain provisions regarding territorial rights and right-of-first-refusal privileges for any pre-existing or acquired corporate chapters. (Doc. 115 at 24–25.) The LISMG parties argue LeTip Franchise breached the Franchise Agreement by establishing a brand new LeTip chapter called "Island Virtual." (Doc. 122 at 8.) This argument fails for two reasons.

First, the counterclaims themselves show the Island Virtual chapter does not fall under the pre-existing or acquired chapter provisions. (Doc. 115 at 26 (alleging LeTip *created* Island Virtual nearly three years after the Franchise Agreement was signed).) Second, although the contract prohibited anyone from holding meetings in venues physically located in the Franchise Area, the LISMG parties do not allege the Island Virtual chapter held any such chapter meetings. (*See* Doc. 115 at 24 ("no other person other than you may hold chapter meetings…[in] venues physically located within your Territory").) The LISMG parties do not show a breach based on the language of the Franchise Agreement.

The LISMG parties also base their breach-of-contract counterclaim on allegations that LeTip Franchise marketed to existing members of LISMG's chapter. The LISMG parties allege that LeTip Franchise solicited LISMG chapter members through "personal conversations," "written communications," and "social media communications" (Doc. 115 at 27), yet they fail to explain how any of these communications would be prohibited by Section 3.1 of the Franchise Agreement. Section 3.1 prohibits LeTip Franchise, its affiliates, and other franchisees from targeting marketing within LISMG's territory but does not appear to define that term with respect to LeTip's marketing efforts and appears to permit certain other types of marketing. (Doc. 115 at 24.) The counterclaims do not explain why the alleged personal conversations, written communications, or social media communications would be considered targeted marketing under the Franchise Agreement.

Lastly, the LISMG parties allege LeTip Franchise breached the Franchise Agreement through improper termination of LISMG's members under the LeTip By-Laws. (Doc. 115 at 28.) But beyond merely alleging that LeTip Franchise terminated members in violation of the by-laws without proper procedure or authority, the LISMG parties included no facts to support these claims, nor any contractual provision requiring adherence to the LeTip By-Laws. Without those allegations, the LISMG parties cannot show a breach. *See Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021) (explaining breach-of-contract claims must identify a material obligation allegedly

breached, and incorporation requires evidence the parties clearly intended an outside document to be part of the contract). This breach-of-contract theory fails.

### ii. Franchise Agreement Termination

The LISMG parties also argue LeTip Franchise breached the Franchise Agreement by improperly terminating it. They allege Pfleger received permission to affix the modified logo to his boat and, when told he could no longer use the logo, cured any breach within 30 business days as Middleton allegedly allowed.

The LISMG parties appear to invoke three contractual provisions to support this claim. First, the contract allowed them to obtain approval for their marketing (Doc. 115 at 29), and they allege LeTip gave them that approval in the form of a text message from its former owner and CEO on August 21, 2021 (Doc. 115 at 30, 36). Second, the contract allowed for termination without a cure period only if the LISMG parties committed "any act that [could] reasonably be expected to adversely affect" LeTip Franchise's reputation or goodwill, and Pfleger's use of the Just LeTip logo could not have that effect because (apparently unrelated) businesses in Nevada and other LeTip chapters also use "Just LeTip." (Doc. 115 at 34–36.) Third, the LISMG parties point to an alleged conflict between the IP and advertising provisions of the Franchise Agreement to suggest the former CEO's text-message authorization satisfied the IP provision because it meant the use of the logo was not "unauthorized." (Doc. 115 at 34, 37.)

Although there may be valid theories supporting dismissal of this claim, neither LeTip's motion nor its reply addressed them. (*See* Docs. 118 at 10; 126 at 7–8.) The amended counterclaim raises this breach-of-contract theory and points to specific provisions of the Franchise Agreement that may have been breached. (Doc. 115 at 28–38.) The motion to dismiss presented a few scant sentences as to why this theory should fail (Doc. 118 at 10) and failed entirely to address the counterclaim's allegations regarding Pfleger obtaining permission to use the modified logo or the relationship between the Franchise Agreement's advertising and IP provisions. Because the LISMG parties adequately identified this theory in the amended counterclaim and the LeTip parties failed

1  to seek its dismissal on any valid ground, the motion to dismiss this specific breach-of-
2  contract theory is denied. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)
3  ("In our adversarial system of adjudication, we follow the principle of party presentation.").

### IV. Defamation

The LISMG parties allege a claim for defamation per se against Middleton based on her statements to other LeTip members that Pfleger intentionally altered the LeTip logo into a "sexually suggestive, vulgar" phrase "even though [she] knew, or reasonably should have known" that Pfleger (1) had permission to use the altered logo and (2) only used it as a sales incentive for others because the logo meant that Pfleger bought the boat "just using LeTip money." (Doc. 115 at 38.) The LISMG parties argue Middleton's statements were a "false statement of fact" that damaged the professional reputation of the LISMG parties. (Doc. 115 at 40.)

#### a. Parties

The LeTip parties argue LISMG and Calamas should be dismissed because Middleton's statement was made only about Cliff Pfleger. (Doc. 115 at 38.) Under Arizona law, a statement is defamatory only if it "reasonably relate[s] to specific individuals." *Ultimate Creations, Inc. v. McMahon*, F515 F. Supp. 2d 1060, 1064 (D. Ariz. 2007) (citing *Hansen v. Stoll*, 636 P.2d 1236, 1240 (Ariz. Ct. App. 1981)). Here, the statement only concerned Pfleger and could not be reasonably related to Calamas or LISMG. Therefore, the motion to dismiss is granted regarding Calamas and LISMG.

#### b. Defamation Per Se

Pfleger alleges defamation per se[2] which requires statements that are "facially defamatory" and need no "'extrinsic matter' or facts to understand the statements are defamatory." *Ruggeroli v. Residential Real Est. Council,* No. CV-23-00259-TUC-JAS, 2024 WL 4203156, at *6 (D. Ariz. Sept. 16, 2024). But a threshold requirement for any defamation claim is that the statement at issue must have been false. *See Masson v. New*

---

[2] Defamation can also be "per quod." *Ruggeroli*, 2024 WL 4203156, at *6. This theory was dismissed in this court's May 25, 2025, order (Doc. 111 at 10–12), and the LISMG parties have made clear they did not resurrect it in the amended counterclaims (Docs. 115 at 40; 122 at 12).

- 9 -

*Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991); *see also Dube v. Likins*, 167 P.3d 93, 105 (Ariz. Ct. App. 2007). The court's prior order noted "Just LeTip" has a "'sexually suggestive' and 'vulgar' connotation." (Doc. 111 at 11.) There are no allegations indicating some unique context that would draw that obvious conclusion into question. *See Harris v. Warner in & for Cnty. of Maricopa*, 527 P.3d 314, 318 (Ariz. 2023) (statements must be analyzed "within their proper context to determine their meaning"). The defamation claim fails because the statement was true.

Truth is an absolute defense to defamation. *Masson*, 501 U.S. at 516–17 (1991). In Arizona, a statement must only be substantially true to meet this threshold. *Read v. Phx. Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. Ct. App. 1991). When the underlying facts of the statement are undisputed, as is the case here, the determination of substantial truth is left to the court. *Id.* (citing *Fendler v. Phx. Newspapers Inc.*, 636 P.2d 1257, 1262 (Ariz. Ct. App. 1981)). Setting aside Pfleger's valiant but unconvincing pronunciation of "Just LeTip" during the preliminary injunction hearing (Doc. 49 at 11), the altered logo was clearly intended to be a play on the common sexual colloquialism "just the tip." *See* Urban Dictionary, *Just the Tip*, www.urbandictionary.com/define.php?term=Just+the+Tip [https://perma.cc/4AN4-G9JE] ("To insert no more than 20% of something, usually a body part, into an opening of another person . . . .") (last visited Sept. 11, 2025). To be clearer this time: the court finds it is at least substantially true that "Just LeTip" is sexually suggestive and vulgar. Therefore, the defamation charge against Middleton is dismissed.

The court previously granted leave to amend the LISMG's counterclaims for breach of contract and defamation. No further leave to amend will be granted, as each party has enjoyed ample opportunity to present their claims and defenses. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted); *see also Robinson v. GE Money Bank*, No. 09-CV-00227-AWT, 2014 WL 12693835, at *2 (D. Ariz. Apr. 15, 2014) ("Plaintiffs have already had two opportunities to state a claim, and they need not be granted a third

opportunity.").

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 118) is **GRANTED IN PART** and **DENIED IN PART**. The breach of contract claim may move forward on the theory of improper termination without opportunity to cure. The defamation claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

Dated this 12th day of September, 2025.

Honorable Krissa M. Lanham
United States District Judge